May it please the Court, Timothy Hogan, on behalf of the appellant William R. Hancock, individually and as trustee. How about if you pause for just one second so we can let these folks come back in. Sorry about that. We were a little quick on returning. Just one second. I'll restate my appearance, Your Honor. May it please the Court, Timothy Hogan, on behalf of the appellant William Hancock, both as an individual and as trustee. Your Honor, this case comes down to really one issue. It's a legal issue. There's a lot of periphery around it, but the issue is whether a forged deed passes title in the state of Hawaii. Example I would use, Your Honor, would be if somebody counterfeits a bill, the statute runs and counterfeiting has a long statute. After that statute runs, you don't get to use that bill. It's still a forged instrument and when you use it, it's uttered. The Palau Court, which ruled in 1914, addressed that issue and consistent with other holdings in other states, held and has not been reversed, that when a deed is forged, it is void ab initio, which I take for at the get-go. And it doesn't get cured unless it's addressed, unless someone does something. And that's why we're here today, Your Honor. That's why we went to the district court. No court below ruled on this issue. The issues, there is a state court case that's on appeal. It's still pending before the Intermediate Court of Appeals here. There's been no oral argument set in that case. But as we've stated in our brief, Hawaii does not give res judicata to a case on appeal. So we're here essentially where this court can rule and can settle this once and for all if the court chooses it. Let me ask you a question before you get too far into the merits of the case. I'm concerned about whether or not we have power to help you, even if you're right. You're up here on diversity jurisdiction. And unless you have pled and are able to show that there's no diversity, the citizenship is such that it's diverse. The difficulty that we've run into is that one of the parties is not a person. It's an organization. Yes, Your Honor. And under our rules, you have to show that all of the owners of the organization, when their citizenship is determined, there's still diversity jurisdiction. I look through the record and I don't see where that has been alleged or proven. May I ask the court, are you referring to the defendants that are organizations? The LLC. I'd have to look at the complaint, Your Honor. I apologize. Law and Partners, LLC, Hawaii limited liability on the caption, Your Honor. Yes, that's right. But an LLC is made up of individuals. And under our law, you have to prove the diversity of each individual in an LLC. And I don't see where that has been handled at all in the case. So I'm not sure we have diversity jurisdiction. Well, Your Honor, lucky for me, I pled an alternative jurisdictional basis that this is related to a bankruptcy case pending in this jurisdiction. I always like to button them up, Your Honor, and I did in this case. What you're saying is that you have not considered that issue, and so you're not in a position to tell us whether we have diversity jurisdiction, but you want us to go off on jurisdiction pertaining to the bankruptcy court appeal? Well, if that's all I've got, Your Honor, I sure do. So this was related to a famous bankruptcy case. A lot of it went on right in this room, Your Honor. And so I pled it. Okay. And like I say, Your Honor, if the court doesn't want to proceed, then I would obviously wouldn't want to waste your time. But if I may, Your Honor. Of course. No, we will hear you on the merits. But yeah, you don't have anything else to say on jurisdiction? On that issue on the LLC rule, Your Honor, I'll be honest, it's news to me, sir. And so I'm not going to try to make something up. Okay. All right. Well, let's hear you on the merits. So what we're dealing with is whether or not we've pled a forged instrument, and there's a detailed description of what happened. There really isn't any dispute, and we've had this sort of summary judgment cross motions that are somewhat – I don't know if they have them in other districts, but we have a local rule, both in the bankruptcy court, it's in the district court, which is a counter motion. It allows you to file if it's the same subject matter. The district court said that it had to be the same motion, but that's not what the rule says. So I filed it because it was the same subject matter. So there was evidence presented, concise statements conflicted, and there doesn't seem to be in the record any real dispute that somebody took the pages of an executed, notarized document and switched them out without permission, at least not from my client, who was the one who signed the notarized document. You know what? You may have a problem, and you can tell me that you don't, but are we – do we have a time – do you have any problems with time? But you say, okay, the deed was filed, but it was fraudulent. It was whatever it was, but whatever it was, it was what it appeared to be, and it was filed. And it stayed filed for, I think, 11 years. Isn't that about so before anything was done? Doesn't that create some statute of fraud problem? Well, I – a bad instrument cannot be cured by the passage of time. That's the Hawaii rule. It's consistent with other states, that if you forge it, you take a risk. And that's why in a transaction like a land transfer, people get title insurance. They get title insurance from a title company who is the one who handles the documents. They have the power to prevent what I think what the court is referring to is something – All I'm referring to is if the deed was properly filed, as I understand it, and you're saying there are bad things about the deed, but it was properly filed and remained off record for 11 years before anybody brought it into action. And I'm thinking that you've got a problem with statute of fraud. You're saying it's void ab initio. Maybe it was. I don't know. Maybe it was. Maybe it wasn't. But let's assume it had been real property that would – it had been transferred four or five times in 11 years. A lot of real property is, as you know. Then you assume, if you don't have a statute of fraud problem, you can just come in, regardless of how many times it's been transferred, and say, wait a minute, it was a fraud. And I'm thinking that that's why I think whether this is Hawaii or wherever it is, we're going to have to take a look at whether or not somebody should have come to somebody's attention before 11 years had passed. Now, you can tell me why that's not a problem. I raised it so you can explain why that's not a problem. I would go back to the counterfeiting analogy. Well, I heard what you said. You said if it's ab initio, if it's this from the beginning, it is forever. And I think let's assume – so what I get, you say, okay, let's not wait 11 years. Let's wait 30 and let it move as real property does. And then you could come in and say, wait a minute, this deed is a bad deed. Yes, and that would create a potential for mischief, Your Honor. Well, I think you're arguing, though, that that's what can be done. Unless you correct me, that's what it seems like you're arguing. Well, the Hawaii law provides for that, Your Honor. Maybe Hawaii was wrong in 1914. Or maybe this court is going to have to clarify what can and what cannot be done. And I don't want it to happen at your expense. If you know an answer to the question, now is the time for you to give it to us. We know the facts. The deed was recorded and it remained recorded 11 years before you acted. I thought 11 years and it was 11 years. So if you think that's not a problem, go ahead with whatever you want to say. But I'm bringing to your attention the fact that that might pose a problem for you. Yes, Your Honor. I guess part of it would be how you discovered it and what you did when you discovered it. Those would be the things you'd start to look at. And whether or not somebody had a duty to tell you they did it. And that's also pled and it was also part of the summary judgment motion. It's part of a public record and it is when it's filed. This isn't something that's been secreted. I mean, you know, nobody knew about it. It was filed and it was a record. And it was, Your Honor. Yes. But to presume that everybody is supposed to be somehow. But that is the presumption. When you file, the presumption is the world knows. Isn't that so? It is a presumption, but like most presumptions, it's rebuttable, Your Honor. And it's rebuttable because if somebody had a duty to tell you they doctored the thing they filed, then what happened to that duty in the midst of it all? It might be that you should have read it. And that's, you know, for the typical transaction in a development, to have people standing around at the Bureau of Conveyances. We have a very good recording system here. You can look at any deed in the state of Hawaii. It's sitting over there. You can look it up, see most of them online. The question is, this thing went along for litigation for a long time. And I came into the case late. I'm not trying to make an excuse, but I came in late. And preparing for the case, we discovered that there were two different deeds in the case. Now, that happened in 2013. I don't think anybody disputes that. You know, they can speak to it, but that's when it happened. And this case is only a few years later than that. So in terms of the concept of latches or anything else, whether you sat on your rights, this thing was brought up right away. It was raised in the state court. I brought it up in a motion in limine. The state court said it's not relevant to this motion in limine. I'm not looking at it. And that's why I came to the district court. I came over here to litigate it. I would argue, Your Honor, in a state that says it's void ab initio, you can come back 100 years later. Yeah, I think that's what you have to argue. Yes, 100 years later. You have to argue. And no matter how many times it's changed hands or what has happened, you can come back and say, oh, wait just a minute. My great-grandfather owned this, and I own it. Yes. That's what I think. I believe that to be the actual law, Your Honor. It would be a strange rule, wouldn't it? Well, that's why we have title insurance, Your Honor, and that's why one of the defendants is a title company. Because when we do these transactions, and this is part of the world that almost brought the entire world economy to an end. Sloppy handling of real property transactions, mortgages, everything. Almost stopped. Every ATM machine on planet Earth almost stopped because we had a sloppy business practice in the United States that infected the world. This is the tail end of that. This was not the way you do it. And it is indefensible from the perspective of a title company to modify a notarized document without consent. Now, when you go in now, if anybody goes in now and gets a mortgage, you sign that little thing on the mortgage. I get more mortgages than most people. But it says we can correct it, but they tell you about it. And so if they forgot, you know, a page fell out or something like that, you've had the original documents. Since this case, I will say, I've seen that appear in a closing. And it's because this is how we fix problems in the United States. And our land records in this state are good ones. Just in a sentence, what should be our bottom line, so far as you're concerned, when we look at the 11-year delay? Well, lucky for my client that I spotted it. Lucky for him. Because no one else had spotted it. And this case had been going on for seven years or something, and no one noticed it. And the documents that we got this from were ones that were provided by the defendants. It's in my papers. It was a disk that they gave us. I don't want to go outside the record, but this was not trying to catch somebody at something. It was clear that somebody changed an easement and a grant that was in it. That's a significant change in a document. And if you want to stop that, Your Honor, and I think anyone would, particularly people in our profession, you do it by making somebody pay for it. We want to decide this case according to the Constitution and the law. That's what we want. I have one question about timeliness. The district judge said the time started at recordation. But I don't see this. I assume we're going to have to look to the Hawaiian law, and I don't see anything in the briefs or that the district court said on the timeliness issue that it starts with the recordation. Do you know of any Hawaii case that says that? No, I do not, Your Honor. I relied on Palau, which says it's void ab initio, and it can be brought at any time. It's in the case. Okay. I ran out of time. I appreciate the courts. Yes, we'll give you a minute for rebuttal. If that would please the court, thank you. Good morning. Good morning. Well, why don't you start off with jurisdiction? Do you agree with your adversary that because we don't know what the citizenship is of the members of the LLC, we don't have a showing of diversity? I agree with you that we do not know who the citizens are of the LLC, the members of the LLC. So I agree with you that we do not know whether this court has jurisdiction, diversity jurisdiction. Well, we always like to know if we have jurisdiction before we take the time to write opinions, and preferably we even do it before we have to read the briefs. So what we have now is we just don't know based upon this record. What is your understanding of the law when we get to the place and all of a sudden decide we don't have jurisdiction? Do we dismiss the appeal? You would dismiss the appeal, Your Honor. You would not have jurisdiction even if we consented to jurisdiction. Okay. Now, counsel indicated that he finds the jurisdiction because there's a bankruptcy involvement. What's your response to that? I believe he may be accurate that there is a bankruptcy involvement. However, I do not agree with him regarding KPL, KPL's involvement with the bankruptcy. He refers to James Lull and that James Lull was somehow connected to this property, but he has not drawn the connection between James Lull, Remnant 3, and this lawsuit regarding the alleged forge deed. Well, if we're still at sea on this when we get together, we may be asking you to do some additional research, you and your counsel. Okay. Thank you. Let's get straight to the statute of limitations. The document was recorded 11 years prior to the commencement of this lawsuit. We had nine years of state court litigation, two bench trials, one final judgment in the state court, one judgment on appeal. What we have here is Hancock's belated attempt to unwind nearly a decade's worth of litigation. During that time, I saw two kids graduate from high school, one graduate from college. I have another one who's getting ready and deeply rooted in getting ready to go to college. I have PTSD. We have been dealing with this deed for far too long. He is test-driving courts. He test-drove this issue in front of Judge Valenciano in the Fifth Circuit. He raised the identical argument in summary judgment. He raised the identical argument in motion in limine. It was denied. By his own admission, he came here to this court because he didn't seek or he did not obtain the rulings he wanted. That's true of almost every appellant that we see. But the thing that bothers me is the court below said that all of these cases are out of fraud. Therefore, the district judge decided that it would just look at fraud in order to determine whether the statute of limitations is run. I have a problem with that because clearly they weren't. There are several of the cases that were simply not fraud. The injunction, trespass, ejection, all of those aren't caught by the same statute of limitation. To the extent that the district judge made a mistake on that, do we have to remand it so you can have another opportunity on this case below? Boy, I hope not. I'm hoping that you affirm his ruling. I understand, but we may not be able to. So you're in a position to tell us why we can do that. When the district judge makes a determination that is critical to how the case is going to be handled and decides they're all fraudulent, then we look at the case and we say clearly some of these are not fraud cases. Then what do we do with it? Don't we have to send it back for the judge to take another look and see which are, in fact, fraud cases and then make an appropriate determination based upon that finding? Well, it appears that this complaint, Hancock's complaint, the underlying premise is fraud or forgery, which is the underpinnings for his eviction and trespass. That's what he says, but when you have injunction, trespass, ejection, those aren't fraud causes of action. But those claims are premised upon a purported fraudulent deed, upon this recorded 2002 trustee's deed that was allegedly fraudulent. You don't get to trespass or eviction unless you reach the predicate act, which is this purported fraudulent deed. How about the cancellation claim? The cancellation of the deed? I would say that that's barred by the statute of limitations. How is that? It's an equitable claim. There's no statute of limitations. No statute of limitations. So he could come in here, as Your Honor referred to, 100 years from now to cancel the deed. He may not last more than 15 minutes with it. I would suggest that under the circumstances of this case, he voluntarily conveyed the property. He intended to do so. He wanted to sell the property to KPL. He dealt with the property a year later by entering into a settlement agreement with Mr. Grimpus because of this purported easement. He was dealing with this property and the conveyance of this property and knew or should have known, at least at the recording of the deed, and no later than the settlement agreement, of the contents of that trustee's deed. He knew in 2003, when he entered into the settlement agreement with Grimpus, that there was no such easement. Otherwise, there would have been no reason to enter into the settlement agreement with Mr. Grimpus. So under the specific facts of this case, it was wholly appropriate to apply the six-year statute of limitations. Very appropriate, particularly given that he was continuing to deal with the property and with Mr. Grimpus regarding this easement. He applied the six-year statute of limitations because of fraud. Correct. But all of the claims are not fraud claims that they bring. I agree with you, Judge. So what do we do about the others that aren't? Affirm the decision because the basis for those claims relates to the fraudulent or forged deed. So that would get you through most of them, but it wouldn't for a petition for cancellation. What do we do with that? Your Honor, I didn't see, and I apologize, I didn't see that his complaint included a claim for cancellation. It was a deck relief claim to avoid the deed. You may be right, but that's your view. Yes, Your Honor. Okay. Do you want to divide the time with your co-counsel? Yes. Okay. Then I think you should turn the podium over to him. Thank you. Thank you, Your Honor. May it please the Court, Eric Levesseur on behalf of Defendant Appellee Fidelity National Title and Escrow of Hawaii. Your Honors, in this case, the district court properly recognized Hancock's claims for what they truly are, an attempt to unwind years of state court litigation, and in the district court's words, a naked attempt to resurrect time-barred claims. If I could, Your Honor, I'd like, Judge Wallace, I'd like to address your first issue, the jurisdictional issue. Please. As a threshold matter, I would agree with your analysis on the LLC issue, that you would look to the domicile of the members of the LLC as being determinative of whether or not diversity jurisdiction exists. I'll concede, Your Honor, that issue was not briefed, I don't believe, by any of the parties in this case. So if we conclude that, we would have to at least remand it for the district court to make that determination? Well, I believe, Your Honor. A temporary remand? I don't know how else you do it. We don't usually take evidence up on this level. It's a fair question, Your Honor. Thanks. Perhaps that would be the only way to deal with it. I think you would probably be right in that instance. Okay. We did, however, to the extent that Mr. Hogan did raise the issue, we had broached both at the district court level and then as well up here in our appellee brief this issue of the related to bankruptcy jurisdiction. And I'll concede, Your Honor, to the extent that the jurisdictional issue didn't seem to be truly an issue up here. We had indicated in our appellee brief that we disagreed with Mr. Hogan's take that related to jurisdiction exists. I concede many years ago we had looked at that issue. It was never fully briefed. But I'm not certain I would agree with Mr. Hogan that that's a slam-dunk issue and that that's been resolved. Is some part of this case involved with what we can consider bankruptcy jurisdiction? I'm sorry, Your Honor. Is there some part of this case that we can actually look at and say this is part of bankruptcy jurisdiction? As I recall our analysis, Your Honor, the answer would be no, that there really isn't, that there is no quote-unquote related to jurisdiction. Yeah. Well, this wasn't in the briefs. This was something that counsel came off with with no background research. But if that's a possibility, then maybe the case can be saved without the diversity jurisdiction issue. But we'll have to get into that. But I didn't understand how the bankruptcy jurisdiction applied to this case. We don't believe it does, Your Honor. That can be a problem. Your Honors, if I may, turning more towards the merits. Your Honor, the district court spent a lot of time going through this issue of whether the claim sounded in fraud, whether or not fraudulent concealment would apply in this case, such that statute of limitations would be told, or it wouldn't be. However, I'd like to start at a more fundamental threshold level with respect to the claims against fidelity national title. The issue there, Your Honor, is the simple fact of the matter is we need to look to Hancock's complaint. And his complaint does not state a viable claim for relief against fidelity national title. He asserts three quote-unquote claims for relief. Declaratory judgment, injunctive relief, which I'll generously also call a quote-unquote uttering claim, and then his final claim for relief is trespass and ejectment. Your Honor, if you look starting at the declaratory judgment claim, if you look to what he's requesting in his demand for relief on the declaratory judgment claim, he's requesting a declaration that the subject trustee deed be declared void. Your Honors, fidelity national title is not a party to that deed. Whether or not that deed was upheld or declared void, we would frankly have no horse in that race. So I don't think to the extent that there is this claim, so to speak, for declaratory relief, that necessarily implicates fidelity's interests. With respect to the injunctive relief claim that Mr. Hancock has set up, I would note, Your Honor, there's absolutely no facts in the body of that claim, no allegations that tie to fidelity at all. Fidelity is left silent. Mr. Hancock's allegation is that Kulana Partners has been out in the world uttering this deed, setting aside the fact that we don't believe there's any civil cause of action for quote-unquote uttering. On the injunctive relief side, he's alleged no facts vis-à-vis fidelity national title. I will concede in his demand for relief, he adds in when he's addressing his injunctive relief claim, he adds in the initials FNT. Your Honor, I'd respectfully submit at that point, with there being no substantive allegations regarding fidelity on that claim, that at that point in time when he gets down to his demand for relief, simply adding in our initials is really nothing more than adorning the pleadings at that point in time. What should be our bottom line so far as you're concerned? Fidelity's not in the game?  Your Honor, I was just turning to the final claim, which is this trespasser ejectment claim as he captions it. Well, presumably you could in theory have a civil claim for trespass, ejectment being the attendant remedy to that claim. But the fact of the matter is he's never alleged, and it defies logic that fidelity would be in possession of this property, which is kind of the sine qua non of a trespass claim. And absent any allegation, which there isn't, that we're not in possession of the property, I don't see how he has any type of viable, actionable claim for relief against fidelity in this case. So I think on that ground alone, Your Honor, setting aside all of this stuff related to the fraud, is it a fraud, is it a fraudury, how do you deal with that at a very basic threshold level, until the complaint fails to articulate an actionable claim for relief as against fidelity? And I see, Your Honors, my time is running short. If the Court would like me, I can touch on the other stuff. I believe Ms. Ching has done a nice job with that. Other than that, Your Honor, unless the Court has anything further, Your Honors, thank you very much for your time, and we ask that the District Court's judgment be affirmed. Thank you. Thank you very much. Let's give opposing counsel a minute for a rebuttal. Thank you very much, Your Honor. I'll be quick. Well, if you think this case took a long time, wait until you send it back, because when we find out who was in the LLC, I think we're going to find out it was the debtor, James Lull, who was in the LLC. You notice they don't even know who's in it. And he was the one, and I would ask this rhetorically, how long do you think litigation will go in the Bernie Madoff case? This was our Bernie Madoff. And the person who I think was in the LLC is Bernie Madoff. So there is jurisdiction in this bankruptcy jurisdiction, Your Honor. And if you want to know who the person is, he has his own made for TV. There's a TV show about it. You've got one problem, though. Well, you may have one problem. We look at the pleadings. Understood, Your Honor. As far as the claims against Fidelity, so I didn't just put Mr. Lull in there because I just picked him out of a crowd. He was the one who put this deal together, and there's these little pieces of it that show that it looked like he was taking a piece. So he may have been in the LLC, but I will say the ones we know of was one in Georgia and I believe one in Arizona. That's what's going to come out of it. The other one might be a Hawaii resident, but my client's in Nevada. So that's the first one. As far as no claims against Fidelity, Fidelity is a fiduciary with a duty to disclose its malfeasance. I request damages against them on paragraph 30 of the complaint. I'm sorry, on 35, including punitive damages. And I then again ask for it in the prayer. Now, this is a first complaint. I've never amended this. So the cure is to allow leave to amend if there's a defect like that. Unless it can't be corrected. Unless it can't be corrected. But I can come up with a claim against somebody, Your Honor. That's what we do. Well, that's maybe one of the problems with this case is that you come up with a lot of things that are not going to be substantiated when we turn to deciding the case. But at this point, Your Honor, everything in this is supposed to be viewed as true,  and I believe I'm entitled to have the case remanded. Smart thing, Your Honor, from my perspective, is to cancel that deed. Because it's a forgery. No one's claimed it isn't. And that shouldn't be out there in the wild. Thank you, Your Honor. I know your time's up, and I don't want to have another argument with you. So you may not get to that at all if we decide that you've delayed too long in raising the question of the defective deed. Do you understand why I asked you that question as you started out? And if we decide that, it's over. Yes, Your Honor. All right. Thank you for the court's indulgence. Thank you for your arguments. The case just argued will stand submitted.
judges: Wallace, Farris, Watford